# SUPPLEMENT.

OPINION OF THE JUSTICES TO THE GOVERNOR AND COUNCIL.

The "Rearrangement of the Constitution" of the Commonwealth, submitted by the Constitutional Convention to the people for ratification and adoption at the State election on November 4, 1919, and then adopted and ratified, is not the "Constitution or Form of Government for the Commonwealth of Massachusetts."

THE following order was passed by the Governor and Council on December 31, 1919, and on January 5, 1920, was transmitted to the Justices of the Supreme Judicial Court. On January 20, 1920, the Justices returned the answer which is subjoined.

WHEREAS, in connection with the issue and approval of bonds issued and to be issued by the Commonwealth of Massachusetts the question has arisen whether the title of Treasurer and Receiver General of the Commonwealth, as established by the Constitution of 1780 and the amendments thereof, has been changed, by the rearrangement hereinafter referred to, to "Treasurer of the Commonwealth;"

AND WHEREAS, under article XI of chapter VI of the Constitution of Massachusetts, as adopted in 1780, it is provided:

"This form of government shall be enrolled on parchment, and deposited in the secretary's office, and be a part of the laws of the land; and printed copies thereof shall be prefixed to the book containing the laws of this Commonwealth, in all future editions of the said laws."

AND WHEREAS, articles 157 and 158 of the Rearrangement of the Constitution of the Commonwealth, as adopted at the State election held on the 4th day of November last, provide as follows:

"Art. 157. Upon the ratification and adoption by the people of this rearrangement of the existing constitution and the amend-

ments thereto, the constitution shall be deemed and taken to be so rearranged and shall appear in such rearranged form in all future publications thereof. Such rearrangement shall not be deemed or taken to change the meaning or effect of any part of the constitution or its amendments as theretofore existing or operative.

"Art. 158. This form of government shall be enrolled on parchment, and deposited in the secretary's office, and be a part of the laws of the land; and printed copies thereof shall be prefixed to the book containing the laws of this Commonwealth, in all future editions of such laws."

ORDERED: That the opinion of the Justices of the Supreme Judicial Court be required upon the following important question of law:

Whether the Rearrangement of the Constitution of the Commonwealth submitted by the Constitutional Convention to the people for ratification and adoption at the State election held on the 4th day of November last — and at said election approved and ratified — is the "Constitution or Form of Government for the Commonwealth of Massachusetts."

To His Excellency the Governor and the Honorable Council of the Commonwealth:

The substance of the important question of law in the order adopted by the Governor and Council on December 31, 1919, copy of which is hereto annexed, is: What is now the Constitution of the Commonwealth? Is it the document entitled "Rearrangement of the Constitution," approved and ratified by a majority of those voting on the matter at the November election of 1919, or is it the Constitution adopted in 1780 with the subsequent amendments?

It is customary, in ascertaining the meaning of any constitutional instrument, to scrutinize its history and consider the circumstances under which it came into existence. Its meaning must be sought primarily from the words used. It cannot be controlled by resort to other written records, or to the opinions of individual statesmen, legislators or publicists. In appropriate instances, other sources of information and enlightenment may be examined, such as reports of committees, utterances in their

deliberative capacity of those presenting such reports and actions of conventions or legislatures. Courts and judges frequently refer in greater or less detail to the debates in assemblies undertaking to frame constitutions or amendments to constitutions in order to throw light upon provisions presented for interpretation. *Opinion of the Justices,* 126 Mass. 557, 561, 591–593, 598, 601. *Legal Tender Case,* 110 U. S. 421, 443. *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290, 317, 318. *United States* v. *Wong Kim Ark,* 169 U. S. 649, 697–699. *Orr* v. *Gilman,* 183 U. S. 278, 285. See *Legal Tender Cases,* 12 Wall. 457, 652–656, and *United States* v. *St. Paul, Minneapolis & Manitoba Railway,* 247 U. S. 310, 318.

The Constitutional Convention convened pursuant to St. 1916, c. 98, after somewhat protracted sessions in 1917 and 1918, and after having proposed three amendments balloted upon at the election of 1917 and after having voted to propose for the popular vote at the election of 1918 nineteen additional amendments to the Constitution, provided for the appointment of a "committee on Rearrangement of the Constitution." The duty of that committee as expressed in the order for its appointment was, "after the submission to the people of all the amendments proposed," to "arrange the Constitution as amended under appropriate titles, and in proper parts, chapters, sections and articles, omitting all sections, articles, clauses and words not in force and making no substantive change in the provisions thereof." Accordingly a committee of nineteen members was appointed. Five were selected as a subcommittee to prepare the rearrangement. That subcommittee made a report in May, 1919, consisting of a draft of a proposed rearrangement. Article 159 of that draft corresponded to Article 157 quoted in the order of the Governor and Council. It was in these words:

"Art. 159. Upon the ratification and adoption of this constitution by the people, the constitution heretofore existing, with all amendments thereto, shall be deemed and taken to be revised, altered, or amended accordingly. All laws not inconsistent with this constitution, and all rights, remedies, duties, obligations, and penalties, which exist and are in force when this constitution is ratified and adopted, shall continue to exist and be in force as heretofore until otherwise provided."

Without doubt the effect of that article, if validly adopted as a part of the fundamental law, would have been to create a new constitution and to substitute it for the pre-existing Constitution with all its amendments. If so adopted the old Constitution and amendments would have ceased to be the charter of government and the new Constitution would have taken its place. We are not aware of any records of the proceedings of the committee of nineteen on rearrangement concerning this report of the sub-committee. It may have been felt that Article 159 as drafted went beyond the power conferred by the convention upon this committee which was simply to arrange the existing Constitution and amendments and not to revise, codify or otherwise draft a new constitution. The one outstanding fact, however, is that the full committee having before it the article numbered 159 just quoted, unequivocally providing for a new constitution, rejected and refused to recommend that article but in its stead framed and reported the very different Article 157 quoted in the order of the Governor and Council. The conclusion is irresistible that a radical change of meaning was intended by the rejection of that article numbered 159 and the insertion in its place of the present Article 157.

The committee on Rearrangement of the Constitution submitted to the convention the "Text of the Rearrangement," a "Report" and a "Memorandum" accompanying its report. In its "Report" are found these words:

"The object of the order [that is the order whereby provision was made for the rearrangement of the Constitution] was, as the committee understands it, to have the existing constitution and its amendments, sixty-six in all, brought together in one body, omitting all 'sections, articles, clauses and words' which by the lapse of time, or by repeal, or annulment, or otherwise have ceased to be in force, and making such rearrangement, with the changes in phraseology and punctuation necessarily involved, as would form a consistent and connected whole. The committee are of opinion that it manifestly was not intended that they should draft a new constitution embodying the existing constitution and amendments, and they have not attempted to do so. They have considered that their duty in that regard was confined to one of rearrangement. The committee have construed the order

to mean that it was the will and purpose of the convention that no change in the existing constitution and its amendments should be made by the committee which would or might in any way affect their meaning or present construction, or the construction which has heretofore been given to the provisions thereof, and they have carefully refrained from making any change which, it seemed to them, would or might have that effect."

The "Memorandum" is a commentary explaining in some detail the several articles of the rearrangement. Respecting the Article 157 quoted in the order of the Governor and Council, being Article 156 in the "Text of the Rearrangement," it is said:

"This is a new division and title. It adopts in part the language of the Act for calling and holding the convention (Acts of 1916 ch 98), and is introduced to show that the proposed draft, if adopted, is to be regarded as a continuation of the existing Constitution and amendments so far as the provisions thereof are in force, and that no substantive change in the present meaning and construction or that which has been heretofore given to them is intended."

When the convention met in the summer of 1919 to consider the report of the committee on rearrangement of the Constitution and the text of the rearranged Constitution Mr. Bryant of Milton, not having been a member of the committee of nineteen on rearrangement, put this searching and vital inquiry: "After we have adopted this, and after the people have voted on it, what is going to be the Constitution of Massachusetts? Where are we going to find it? Is it in this document?" He stated his opinion to be that any question as to the meaning of the Constitution could be resolved only by reference to the old Constitution. He closed by expressing the hope that "the question will be answered for the purpose of the record, at least, after the people have adopted this, where shall we find the Constitution of Massachusetts?" Mr. Parker, a former Attorney General of the Commonwealth and a member of the subcommittee of five as well as of the committee of nineteen on rearrangement, at once answered that question. In the course of his remarks he said, referring to the document reported by the committee, "It is not, as we conceive it, a substituted Constitution, it is a rearranged Constitution, preserving in its phrase all the provisions which are believed to

be now operative. If some that are now operative be not found in the new text they are still existing as the cardinal law of the Com-monwealth." Although the records of the convention show that the other four members of the subcommittee on rearrangement were present and participated in the proceedings touching other matters, none of them essayed to reply further to the question of Mr. Bryant or to amplify, qualify or refute the answer made by their colleague, Mr. Parker. The inference from the form of his statement just quoted and from all the circumstances is that he spoke for the committee. There was no other discussion in the convention touching this subject except that another member subsequently asked substantially the same question as that propounded by Mr. Bryant, but no further reply was made.

When the convention in 1917 and in 1918 submitted certain proposed amendments of the Constitution to popular vote, it provided that in case of an affirmative vote the Governor of the Commonwealth should make proclamation of their adoption. It made no such provision in the event of an affirmative vote by the people upon the rearrangement of the Constitution.

The fair inference from these facts concerning the rearrangement of the Constitution and of Article 157 of that rearrangement is that the convention in authorizing the appointment of the committee to make the rearrangement, the committee in making the rearrangement and the convention in finally adopting it did not have the remotest intention of changing in the smallest particular the meaning, scope or effect of the then existing Constitution and its amendments. That is manifest from a mere reading of the votes and reports already quoted. The reasons for that attitude may have been numerous. It may have been because of a determination not to risk disturbance of that which had been settled. The convention had proposed for the vote of the people twenty-two amendments to the Constitution. Most of these were the subject of full discussion and gave rise to considerable contrariety of view among the members. The one relative to the initiative and referendum was very long when compared with any provision of the Constitution or previous amendment. The precise phrase of each amendment was important and had been given painstaking consideration. A fixed purpose that the fruits of such labor and care should not be lost through any accident of

revision of the text would not be unnatural. Many provisions of the Constitution of 1780 and of its amendments have been interpreted and construed by the executive, legislative and judicial departments of government. It may have been thought not wise to unsettle by any possibility this body of constitutional law which has been stabilized by its slow growth.

The approval and the ratification of the rearrangement of the Constitution by the majority of those voting on the subject at the last election do not affect the question proposed in the order of the Governor and Council. That approval and ratification were directed as much to Article 157 as to any other part.

In the light of these circumstances the meaning of Article 157 quoted in the order of the Governor and Council must be ascertained. The first sentence of that article is in these words: "Upon the ratification and adoption by the people of this rearrangement of the existing constitution and the amendments thereto, the constitution shall be deemed and taken to be so rearranged and shall appear in such rearranged form in all future publications thereof." The words "rearrangement" and "rearranged" do not express revision, codification or the establishment of something new. They are inapt to describe a finality. Nevertheless if the first clause of this sentence stood alone there would be strong implication as matter of construction that "this rearrangement of the existing constitution and the amendments thereto" when validly adopted by the people, would be the Constitution. The shadow thrown upon that construction by the words "rearrangement" and "rearranged" is deepened by the concluding clause, namely, "and shall appear in such rearranged form in all future publications thereof." This clause would be wholly superfluous if "this rearrangement" were itself to be the Constitution. If the rearrangement were to be the Constitution, it would not be a "rearranged form:" it would be itself the entire substance and not a "form," rearranged or otherwise. Moreover, if the rearrangement were the Constitution, manifestly it alone could appear "in all future publications thereof." No other document or instrument could be thought or deemed to be the Constitution, or susceptible of being published as such. Declaration to that end would be vain, especially in view of the provisions of the following Article 158, also quoted

in the order of the Governor and Council. The last word of the first sentence, namely "thereof," under these circumstances seems to refer to the words "the existing constitution and the amendments thereto." The second sentence of Article 157 is in these words: "Such rearrangement shall not be deemed or taken to change the meaning or effect of any part of the constitution or its amendments as theretofore existing or operative." That sentence is something different from the formulation of a mere rule of construction. A rule of that nature is at hand in the simple words usually found in general revisions of statutes to the effect that their provisions "so far as they are the same as those of existing statutes, shall be construed as a continuation thereof." R. L. c. 226, § 2. Such a rule of construction recognizes the new as controlling. The second sentence of Article 157 is widely at variance with the thought thus embodied. . This sentence signifies that the old Constitution and its amendments shall not be changed in meaning or effect in any part by the rearrangement. The words of this sentence cannot be given force according to the common and approved usage of the language except by holding that in case of any conflict between the provisions of the rearrangement and the Constitution with its amendments, the latter must prevail and those of the rearrangement must yield. Doubtless it was intended that there should be no change made by the rearrangement. But the deeper question is, in case there is a substantial change, which governs? The second sentence of Article 157 seems to us to declare that in such case "the constitution" of 1780 with "its amendments" shall stand in preference to the "rearrangement." That interpretation is not affected by the concluding words of the sentence "as theretofore existing or operative." Whether these are taken as modifying the words "meaning or effect" or the words "constitution or its amendments" they do not shake or obscure the dominant thought expressed by the sentence. That dominant thought is the continued primacy of "the constitution or its amendments" notwithstanding anything contained in the "rearrangement." It is unthinkable that it was intended that there should be at one and the same time two different and separate constitutions. That would be a contradiction of terms. Either the rearrangement or the Constitution of 1780 with its

amendments must be the Constitution. They cannot both be concurrently effective as constitutions. A written constitution is the fundamental law for the government of a sovereign State. It is the final statement of the rights, privileges and obligations of the citizens and the ultimate grant of the powers and the conclusive definition of the limitations of the departments' of State and of public officers. In its grants of powers, the bounds set for their exercise, the duties enforced and the guarantees established are found the constitutional liberty of the individual and the foundation for the regulated order and general welfare of the community. To its provisions the conduct of all governmental affairs must conform. From its terms there is no appeal. Such a great charter cannot itself in the nature of things be made subject in its "meaning or effect" to another instrument. In that event it is not final and that other instrument becomes paramount. Article 157 in its entirety is language apparently not designed to declare the rearrangement as the final law. Its meaning and effect are by the express words of that article made dependent upon the terms of the Constitution and its amendments. Therefore the rearrangement cannot be itself the fundamental law. It is a rearrangement of the old, it is not the creation of a new form of government.

The rearrangement of the Constitution is an important instrument. It purports to present in unified form and in logical sequence the existing and operative provisions of the Constitution. It possesses all the sanctions naturally flowing from the circumstances attendant upon its origin, composition, adoption, approval and ratification. Doubtless its convenience and accessibility are its abundant justification.

We therefore answer that in our opinion the "Rearrangement of the Constitution" described in the order of the Governor and Council is not the "Constitution or Form of Government for the Commonwealth of Massachusetts."

<div style="text-align: right">

ARTHUR P. RUGG.
HENRY K. BRALEY.
CHARLES A. DE COURCY.
JOHN C. CROSBY.
EDWARD P. PIERCE.
JAMES B. CARROLL.
CHARLES F. JENNEY.