LEONARD B. NYER, trustee, & another[1] vs.
VIVIANA MUNOZ-MENDOZA.

Suffolk.  December 11, 1981. — February 1, 1982.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Landlord and Tenant,* Sign, Control of premises.  *Constitutional Law,*
Freedom of speech.

In an action by a landlord seeking to enjoin a tenant from placing signs
opposing the conversion of the apartment building in which she lived
to condominiums on the access door to her apartment, the exterior of
which fronted on the common area of the building and was visible
from the front entry to the building, the entry of a permanent injunc-
tion against the tenant forbidding any communication by "signs or
notices of any kind" and providing that the tenant "may post signs or
notices within her apartment, except that area which is visible to pub-
lic view" unlawfully intruded on her right to the use of the demised
premises [187-188], and violated her rights to free speech under both
the Massachusetts and United States Constitutions [188-189].

CIVIL ACTION commenced in the Boston Division of the
Housing Court Department on March 11, 1980.

The case was heard by *Daher,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Betty A. Gittes (Marcia F. Gittes* with her) for the de-
fendant.

LIACOS, J.  The defendant occupies, as a tenant, a three-
bedroom apartment consisting of two floors in a building
located at 22 Dartmouth Street, Boston.  Nyer, trustee of
the Lawrence Park Associates Trust, purchased the property
on September 12, 1979, with the intention of subdividing and
selling the property as condominiums.  The defendant was

_____

[1] Jeremiah O'Leary.

a tenant when Nyer (the plaintiff) purchased the property.
The defendant opposed the conversion of the property to
condominiums and placed hand-lettered signs on the ex-
terior of the access door to her apartment. This access door
is an interior door, the exterior of which fronts on the com-
mon area of the building and is visible from the front entry
to the building. The sign stated:

"BUYER BEWARE
"A case in HOUSING COURT to decide on the
CONDOMINIUM CONVERSION of the BUILDING is
still pending. WE WILL NOT MOVE."

On March 5, 1980, the plaintiff obtained a temporary
restraining order ex parte in the Housing Court of the City
of Boston, ordering the defendant "to desist and refrain
from posting signs or notices of any kind upon any portion of
22 Dartmouth Street, Boston, Massachusetts that is visible
to public view including the front entryway." After hear-
ing, this restraining order was made a preliminary injunc-
tion, in the same terms, on April 4, 1980. A judgment
entered, after further hearing, making the injunction per-
manent as of December 2, 1980.[2] The defendant appealed
and applied for direct appellate review by this court. We al-
lowed the application and now reverse.

The defendant's arguments, presented to a judge of the
Housing Court as well as to this court, are that the perma-
nent injunction unlawfully intrudes on her right to the use
of the demised premises, and violates her rights to free
speech under both the First Amendment to the United States

---

[2] Nyer had, in the interim, sold the property to Jeremiah O'Leary.
Rather than declaring the matter moot, the Housing Court judge added
O'Leary as a party plaintiff. The phrasing of the permanent injunction is
as follows: "Judgment enters for the Plaintiff — the Court permanently
enjoins the Defendant, Viviana Munoz-Mendoza, from posting signs or
notices of any kind upon any portion of 22 Dartmouth Street, with the ex-
ception that the Defendant may post signs or notices within her apart-
ment, except that area which is visible to public view."

Constitution and art. 16 of the Declaration of Rights of the Constitution of Massachusetts. Further, the defendant argues the permanent injunction to be unconstitutionally broad and unnecessarily restrictive.

A statement of some of the essential facts is first in order. The defendant was a "tenant" whom the plaintiff was seeking to evict by "various" summary process actions. The plaintiff was seeking the eviction to make the premises available for condominium conversion.[3] The hearing judge found that the defendant had posted various signs on the exterior of her apartment door before and after the March 5, 1980, temporary restraining order. He concluded, in part: "the lessor, in the case at bar, has the right to restrict or prohibit the use of the exterior and the roof of the building for signs, for aesthetic, structural or other reasons and to prevent conflict between his tenants, or between his tenant and potential buyers of condominium units. Except for the Defendant's right to use the common areas to gain access to her premises, the Plaintiff has the right to control the tenant's use of the common areas of the building. The outside of the Defendant's door is no more part of her leased premises than is the outside of her apartment wall."[4]

The judge found a "malicious intent" to interfere with the plaintiff's "property rights" and concluded that an enforceable order would have to be "total." Thus, he issued the preliminary injunction. Although the judge recognized that the defendant's relationship with the new owner, O'Leary, might be "dissimilar," and that "[t]he malice that the Defendant displayed toward the former owner may not be present with the new owner," he concluded that signs on

---

[3] No finding was made whether the defendant was a tenant by virtue of a lease, a tenant "at will," or a tenant "at sufferance." Nor is any finding made as to the original terms of the tenancy.

[4] There are, however, no factual findings as to the terms of the letting, the intent of the parties, or to the physical configurations of the premises. We note from the transcript that there is uncontradicted evidence that the building in question is a duplex in the South End of Boston containing at least four units. The defendant's apartment occupied two floors.

the outside door of the defendant's apartment are not entitled to First Amendment protection. Hence, he ordered the entry of the permanent injunction.

1. We start our analysis with the common law rights of the parties. It is long established in this Commonwealth that a demise to a tenant of premises which include a "floor" or "story" of a building includes therein the right to use the exterior walls of the demised premises, absent special provisions in a lease or in the terms of the tenancy. *Lowell* v. *Strahan*, 145 Mass. 1, 8-11 (1887). In the absence of an agreement, both the interior and exterior of windows of the demised premises are controlled by the tenant. *Leominster Fuel Co.* v. *Scanlon*, 243 Mass. 126 (1922). See also 265 *Tremont St., Inc.* v. *Hamilburg*, 321 Mass. 353 (1947).[5]

We can see no viable distinction between the windows and access doors of the demised premises. There is nothing to preclude application to this case of the same general principles stated above. In every case and authority surveyed where a landlord has been held to have control of doors or doorways leading into lobbies, halls, and passageways used in common by tenants, the passage was from one common area to another.[6] See *Perry* v. *Medeiros*, 369 Mass. 836 (1976); *Goldsmith* v. *Ricles*, 272 Mass. 391 (1930); *Lack* v. *McMahon*, 254 Mass. 484 (1926). See also P.F. Hall, Massachusetts Law of Landlord and Tenant § 199 (Adams & Wadsworth rev. 4th ed., 1949); Annot., 65 A.L.R.3d 14 (1975); Annot., 26 A.L.R.2d 468 (1952). We have found no case involving a door to a dwelling unit which would support the judge's ruling. We conclude that the judge's premise that the landlord had "property rights" in the door leading to the demised premises, and the "right to control" the door, was in error.

---

[5] A letting of "rooms," however, is distinguishable. *Pevey* v. *Skinner*, 116 Mass. 129 (1874). There is no finding here of a letting of rooms. The record shows a two-story apartment unit to be the demised premises.

[6] Common areas are defined as "[a]ny portion of the premises which are used by tenants in common." H. Stavisky & R.A. Greeley, Landlord and Tenant Law § 713, at 473 (1977).

Additionally, to the extent the permanent injunction extends not only to the use of the exterior of the door in question, but to the interior of the defendant's apartment and to the windows of the same, the injunction clearly intrudes on the defendant's property rights.[7]

2. We consider next the free speech claim of the defendant. It is beyond dispute that communication by signs and posters is pure speech. *Baldwin* v. *Redwood City*, 540 F.2d 1360, 1366 (9th Cir. 1976). There is no claim here that the defendant's signs were obscene or offensive, defamatory or even false. We note, further, that even allegedly false and defamatory statements are protected from prior injunctive restraint by the First Amendment and art. 16. *Krebiozen Research Foundation* v. *Beacon Press, Inc.*, 334 Mass. 86, cert. denied, 352 U.S. 848 (1956). See Litwack, The Doctrine of Prior Restraint, 12 Harv. C.R.-C.L. L. Rev. 519, 539-540 (1977). The fact that the defendant was not barred by the permanent injunction from expressing her views by other means or at other places is not material to the question whether her right to free speech has been violated. *Schneider* v. *State*, 308 U.S. 147, 163 (1939).

Assuming a right to restrict speech on the basis of legitimate State or private interest, the means used must be precisely and narrowly drawn so as to avoid unnecessary restriction of constitutionally protected liberty. *Kusper* v. *Pontikes*, 414 U.S. 51, 58-59 (1973). The least restrictive means available must be used. *Baldwin* v. *Redwood City, supra* at 1367. *Commonwealth* v. *Dennis*, 368 Mass. 92, 99 (1975).

Mere intrusion on a person's alleged privacy interest is not by itself an adequate base on which to predicate a broad prior restraint on another's free speech. "No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pam-

---

[7] We need not reach the question whether, if the use to which such an exterior door is put interferes with, or precludes, the appropriate use by the landlord and other tenants of the common areas, a contrary result would be required, as there is no evidence of such interference in the case at bar.

phlets or leaflets warrants use of the injunctive power of a court. Designating the conduct as an invasion of privacy . . . is not sufficient to support an injunction . . . ." *Organization for a Better Austin* v. *Keefe*, 402 U.S. 415, 419-420 (1971). Cf. *Krebiozen Research Foundation* v. *Beacon Press, Inc., supra.*

An examination of the permanent injunction at bar reveals that it forbids any communication by "signs or notices of any kind," presumably as to any topic as well as in any configuration. The injunction further provides that the defendant "may post signs or notices *within* her apartment, *except that area which is visible to public view*" (emphasis supplied). Clearly a sign in the demised area which could be seen through a window by passersby would be in violation of such an injunction. Such a result cannot be justified on the basis of landlord and tenant law. It cannot survive a constitutional challenge. See *Spence* v. *Washington*, 418 U.S. 405 (1974) (flag with peace symbol displayed from apartment window is constitutionally protected speech).

*Judgment reversed.*