DONALD P. BATCHELDER *vs.* ALLIED STORES INTERNATIONAL, INC. & another.[1]

Essex. May 5, 1982. — January 28, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law,* Elections, State action, Shopping mall. *Elections,* Access to ballot. *Shopping Mall.*

A person seeking signatures in connection with access to the ballot in a public election has a right under art. 9 of the Massachusetts Declaration of Rights to do so, in a reasonable and unobstrusive manner, in the common areas of a large shopping mall, subject to reasonable regulations adopted by the mall owner. [91-93] LYNCH, J., with whom HENNESSEY, C.J., and O'CONNOR, J., join, dissenting on the ground that art. 9 does not apply to private conduct of the type challenged in this case. [94-97]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 31, 1980.

On transfer to the Superior Court Department, the case was heard by *Good,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Roderick MacLeish, Jr., & Robert A. Sherman (John Reinstein* with them) for the plaintiff.

*John A. Christopher, IV,* for the defendants.

*Anthony P. Sager & Stephen M. Limon,* Assistant Attorneys General, for the Attorney General & another, amici curiae, submitted a brief.

[1] The other defendant is All-Stores Realty Corporation. The defendants are said to be doing business as the North Shore Shopping Center.

Allied Stores International, Inc., apparently owns the real estate on which the shopping center is located. The record does not set forth in detail the respective obligations of the defendants in the management of the shopping center. We shall refer to the defendants as North Shore and to the shopping center property as the shopping center or the North Shore Shopping Center.

WILKINS, J.  We are concerned with the right of a person to solicit signatures in the mall area of a large, private shopping center in support of a candidate's nomination to public office.  The defendants (North Shore) denied that right to the plaintiff, Donald P. Batchelder.  Batchelder then commenced this action asserting that he had a right under arts. 9 and 16 of the Declaration of Rights of the Constitution of the Commonwealth, and under G. L. c. 12, § 11I, to solicit signatures in support of ballot access in the mall, or common area, of the North Shore Shopping Center.

A Superior Court judge rejected Batchelder's claim and ordered entry of judgment for North Shore.  We granted Batchelder's request for direct appellate review and now conclude that (1) Batchelder had a right under art. 9 to solicit nominating signatures in a reasonable and unobtrusive manner, (2) we need not consider any rights under G. L. c. 12, § 11I, and (3), although the action is moot, the judgment should be vacated and a new judgment entered declaring Batchelder's rights pursuant to art. 9.[2]  We conclude that any person seeking signatures in connection with access to the ballot, and distributing material associated therewith, has a right under art. 9 of the Declaration of Rights to do so, in a reasonable and unobtrusive manner, in the common areas of a large shopping mall, subject to reasonable regulations adopted by the mall owner.

On Saturday, March 22, 1980, Batchelder, a resident of North Reading, entered the North Shore Shopping Center

_____

[2] As we have noted, Batchelder relies in part on G. L. c. 12, § 11I, inserted by St. 1979, c. 801, § 1, in support of a claim for injunctive relief. That section authorizes an action for injunctive and other appropriate equitable relief, compensatory damages, and costs and attorney's fees, by "[a]ny person whose exercise or enjoyment of . . . rights secured by the constitution or laws of the commonwealth has been interfered with" by threats, intimidation or coercion.  We need not consider what, if any, rights are expressed in G. L. c. 12, § 11I, that are not otherwise available pursuant to art. 9.  Batchelder makes no claim, before us at least (the complaint is not in the record appendix), for compensatory damages, costs, or attorney's fees.  The occasion for any mandatory injunction against North Shore has passed.  Therefore, a declaration of Batchelder's constitutional rights is sufficient in the circumstances.

in Peabody for the sole purpose of obtaining signatures, and distributing related printed material, in support of his nomination as a candidate of the Citizens' party in the Sixth Congressional District and in support of the nomination of the Citizens' party's candidate for President. In 1980 the Sixth Congressional District consisted of the cities and towns in Essex County with the exception of the city of Lawrence and four towns. See G. L. c. 57, § 1, as appearing in St. 1971, c. 1074, § 1. Batchelder needed 3,700 valid signatures by May 6, 1980, to be placed on the ballot. In the mall Batchelder solicited signatures and passed out circulars in an orderly and quiet manner. He had obtained about fifteen signatures, during the first half hour of his endeavors, when a North Shore security guard advised him that soliciting signatures and distributing political circulars were not allowed at the shopping center. Batchelder objected but left the premises. Batchelder did succeed in obtaining the required signatures, his name appeared on the ballot, and he received about 3,300 votes in the election.[3]

The North Shore Shopping Center is a large retail shopping center, with an enclosed mall. It has ninety-five retail stores, ranging from large department stores to small specialty stores. There are also a motion picture theater, an exercise facility, a beauty salon, a bowling alley, and a chapel affiliated with the Roman Catholic Church. It is located on approximately eighty-four acres at the junction of Routes 128 and 114 in Peabody, a city in the Sixth Congressional District. The shopping center is the largest shopping mall in Massachusetts. There was evidence that, at the time of the trial, it was the fifteenth largest shopping center in the country. On an average, between 175,000 and 200,000 people visit the shopping center each week. Gross

---

[3] This action was commenced on March 31, 1980, in the Supreme Judicial Court for the county of Suffolk. Batchelder's request for a preliminary injunction was denied on the ground that he had not shown any likelihood of irreparable harm. The case was transferred to the Superior Court in Essex County. The case was tried in April, 1981, after the 1980 election, and judgment was entered for the defendants in July, 1981.

sales in 1980 at the shopping center exceeded $108,000,000.
North Shore schedules special events almost every week of
the year; some are charitable and civic, and some are simply
entertainment.[4]   Many events have a direct commercial
benefit for the tenants of the shopping center by attracting
people to the shopping center; others benefit North Shore
and its tenants by creating goodwill.  The shopping center is
entirely privately owned.  It receives no government sub-
sidy.  None of its property has been formally dedicated to
the public.  North Shore has consistently applied a nondis-
criminatory policy concerning political campaigning.  No
solicitation of signatures is permitted.  Candidates already
on the ballot may appear at the shopping center and shake
hands with voters.

The shopping center is the most favorable site in the Sixth
Congressional District for obtaining signatures of voters in
that district.  Door-to-door solicitation, particularly for a
member of a minority party, is far less effective.  The
downtown areas of municipalities are also less attractive
places to obtain signatures.  In spite of the relatively attrac-
tive qualities of the shopping center, there are other places
in the district where sufficient signatures can be obtained,
as Batchelder himself demonstrated.

We start with the question whether we should dismiss the
appeal because the action is moot.  The 1980 election is well
behind us, and Batchelder did obtain the necessary valid
signatures.  The issues Batchelder raises are, however, likely
to arise again, and appellate review will probably not be
possible in any subsequent action before that case also
becomes moot.  See *First Nat'l Bank* v. *Haufler*, 377 Mass.
209, 211 (1979).  Where the issue is one of substantial public
interest and has been fully briefed and argued, immediate

---

[4] North Shore presents events such as Military Week; a Memorial Day
service; a Peabody School Exposition; Fire Prevention Week; Bicycle
Safety Week; Library Week; a Dental Health Fair Exhibit; a Health and
Beauty Fair; a Boat Show; a Winterizing Show; a Senior Citizens' Week;
a Charity Week at which churches, PTA groups, Girl Scouts, and other
nonprofit organizations may sell homemade goods; a United Cerebral
Palsy Telethon; and orchestra and band concerts.

resolution of the issue is desirable. *Brach* v. *Chief Justice of the Dist. Court Dep't*, 386 Mass. 528, 533 (1982).

Considerations under the Constitution of the United States appear to be substantially neutral on the issue before us. A person has no First Amendment right to distribute handbills in a privately owned shopping center. See *Hudgens* v. *NLRB*, 424 U.S. 507 (1976), repudiating *Amalgamated Food Employees Local 590* v. *Logan Valley Plaza, Inc.*, 391 U.S. 308 (1968); *Lloyd Corp.* v. *Tanner*, 407 U.S. 551, 569 (1972). We will assume that the fact that Batchelder was seeking signatures in support of access to the ballot, and not merely "leafletting," does not enhance his position under the Federal Constitution. Batchelder does not so argue. On the other hand, the Supreme Court of the United States has made it clear that a State may "adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution" and "in the exercise of its police power may adopt reasonable restrictions on private property so long as the restrictions do not amount to a taking without just compensation or contravene any other federal constitutional provision." *PruneYard Shopping Center* v. *Robins*, 447 U.S. 74, 81 (1980).

In the *PruneYard* case, the Supreme Court held that the Federal Constitution does not prohibit a State from creating a right under its State Constitution to distribute pamphlets and to seek signatures on petitions in a private shopping center substantially similar to the North Shore Shopping Center. The Court rejected PruneYard's claim that the State's attempt to authorize intrusions into its private property constituted a taking of its property without due process of law. PruneYard made no showing that the solicitation activity unreasonably impaired the value or use of its property as a shopping center. Furthermore, the California court recognized that PruneYard could restrict expressive activity by adopting time, place, and manner regulations that would minimize any interference with its commercial functions. Thus the Supreme Court concluded that PruneYard had not shown that orderly solicitation in the common

areas of the shopping center was a violation of the taking clause of the Fifth Amendment or of the Fourteenth Amendment guarantee against the deprivation of property without due process of law. *PruneYard Shopping Center* v. *Robins, supra* at 83-85. The Supreme Court also rejected PruneYard's claim that it had a First Amendment right not to be forced by the State to use its property as a forum for the speech of others. *Id.* at 87-88. The Court concluded that members of the public passing out pamphlets or seeking signatures are not likely to be identified with the owners and that the owners could disavow any connection with the message by posting signs in the appropriate area. *Id.* at 87.

Free from any demonstrated restraint or mandate under the Constitution of the United States, we address Batchelder's arguments based on the Declaration of Rights of the Constitution of the Commonwealth.[5] He relies both on the freedom of speech provisions of art. 16 of the Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution ("The right of free speech shall not be abridged") and on art. 9 concerning the freedom and equality of elections.[6] We need not consider Batchelder's arguments under art. 16, in view of our interpretation of art. 9. Unlike the prohibition of the First Amendment to the Federal Constitution ("Congress shall make no law . . .") and the limitation of the Fourteenth Amendment ("nor shall any State deprive any person . . ."), art. 9 is not by its terms directed only against governmental action. There is, thus, no "State action" requirement expressed in art. 9, and we see no reason to imply such a requirement, and thereby

[5] We are not concerned here with the rights of a person to enter on private property pursuant to a statute or duly authorized regulation. See *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 850-851 (1977).

[6] Article 9 of the Massachusetts Declaration of Rights states: "All elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments."

to force a parallelism with the Federal Constitution.[7] Courts in several other States have regarded as meaningful the absence of State action language in their State Constitutions. See *Robins* v. *Pruneyard Shopping Center*, 23 Cal. 3d 899, 908 (1979); *State* v. *Schmid*, 84 N.J. 535, 559-560 (1980), appeal dismissed sub nom. *Princeton Univ.* v. *Schmid*, 455 U.S. 100 (1982); *Commonwealth* v. *Tate*, 495 Pa. 158, 169, 171 (1981); *Alderwood Assocs.* v. *Washington Envtl. Council*, 96 Wash. 2d 230, 243 (1981) (plurality opinion). We also think that the distinction is significant and reject any suggestion that the Declaration of Rights should be read as directed exclusively toward restraining government action.[8] We thus reject North Shore's argu-

---

[7] Even if one were to read a "State action" requirement into art. 9, the result in this case would not necessarily be different. The use of the courts to enforce the laws of trespass could be regarded as "State action" in a constitutional sense. There are some instances, rare and arguably result-oriented, in which the Supreme Court of the United States has been willing to extend the concept of State action so as to affect the relationships of private parties. See, e.g., *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 265 (1964) (First and Fourteenth Amendments limit the circumstances in which a private plaintiff may recover damages in a civil action for libel against a private defendant because the application by a State court of the common law of libel constitutes State action); *Shelley* v. *Kraemer*, 334 U.S. 1, 20 (1948) (Fourteenth Amendment bars enforcement by State courts of private agreements to exclude persons of certain races from occupying real estate); *Marsh* v. *Alabama*, 326 U.S. 501, 509 (1946) (First Amendment prevents private owners of a company town from abridging handbill distribution on its business block because town performs a "public function").

[8] There is language in this court's opinion in *Commonwealth* v. *Noffke*, 376 Mass. 127, 134 (1978), suggesting that a State action requirement might be found in art. 16 of the Declaration of Rights: "And, at least in this context, the protections of arts. 16 [free speech] and 19 [right to assemble] extend no further than the comparable provisions of the First Amendment. . . . Articles 16 and 19 protect the rights of free speech and assembly from abridgement by the government. Therefore guaranties of those articles do not extend to the conduct here which occurred on the property of a private employer" (citations omitted).

The issue in the *Noffke* case was "whether a State court may convict a defendant of trespass for his presence on an employer's premises when he is there as a nonemployee soliciting employees in the course of a union organization campaign." *Id.* at 128. The difference between the parking

ment that we should find a "State action" requirement in art. 9.[9]

A majority of the State courts that recently have considered rights under State Constitutions to engage in orderly free speech, free assembly, or electoral activity on private property held open to the public have recognized such a right. A variety of State constitutional provisions have been found to create such a right. The Supreme Court of California held in *Robins v. Pruneyard Shopping Center*, 23 Cal. 3d 899, 902 (1979) (4-3 decision), aff'd, 447 U.S. 74 (1980), that "soliciting at a shopping center of signatures for a petition to the government is an activity protected by the California Constitution." In *State v. Schmid*, 84 N.J. 535 (1980), the Supreme Court of New Jersey concluded that its State Constitution provided freedom of speech and assembly to individuals, and protected the reasonable exercise of those rights, so as to bar the conviction of a person who reasonably sought to exercise those rights on the campus of a private university which had adopted no reasonable standards concerning the exercise of those rights. In substantially

---

lot of a private hospital and the common area of a multiestablishment shopping center is significant. The *Noffke* opinion did not focus on free speech rights in the context of political activity. Moreover, it was published almost two years before the Supreme Court's *PruneYard* opinion indicated that States were free to fashion their own constitutional principles concerning the exercise of free speech in the common areas of large shopping malls. We decline to take the dictum of the *Noffke* case out of context and apply it to the case before us.

[9] Although it is a powerful document expressing restraints on governmental action, the Declaration of Rights contains other provisions dealing with relationships between private parties. See, e.g., *Reeves v. Scott*, 324 Mass. 594, 598-599 (1949) (arts. 1 and 10 of the Declaration of Rights of the Massachusetts Constitution preclude a private union of musicians from interfering with the lawful conduct of the business of an unaffiliated musician); *McNeilly v. First Presbyterian Church*, 243 Mass. 331, 339-340 (1923) (art. 3 of the Declaration of Rights, as amended by art. 11 of the Amendments to the Massachusetts Constitution, entitles a religious society, against the objection of a minority of its members, to elect a pastor); *Coffin v. Coffin*, 4 Mass. 1, 25-29 (1808) (art. 21 of the Declaration of Rights bars a defamation action by one citizen against another for defamatory words if the speaker was acting as a member of the House of Representatives).

similar circumstances, the Supreme Court of Pennsylvania reached the same result under the Pennsylvania Constitution in *Commonwealth* v. *Tate*, 495 Pa. 158, 173 (1981). In *Alderwood Assocs.* v. *Washington Envtl. Council*, 96 Wash. 2d 230 (1981), a plurality of the Supreme Court of Washington concluded that, under the Washington Constitution, a person has the right to solicit signatures in a large, privately owned shopping mall. One justice, who joined in the result, concluded that the provision of the State Constitution concerning initiative proposals and petitions justified allowing the defendant's solicitation of signatures on private property. *Id.* at 251 (Dolliver, J., concurring). Finally, a trial court in Connecticut, relying on its State Constitution, upheld the right of persons to solicit signatures in support of the Equal Rights Amendment to the Constitution of the United States in the common area of a large shopping mall. *Cologne* v. *Westfarms Assocs.*, 37 Conn Supp. 90 (Super. Ct. 1982). The only contrary view expressed in recent years by a State court of last resort appears in *State* v. *Felmet*, 302 N.C. 173, 178 (1981), in which the court recognized that it could interpret its State Constitution to permit the solicitations of signatures on a petition in the parking lot of a large shopping center but simply stated, without analysis, that "we are not so disposed."[10]

It is important that we carefully define the issue that this case presents. We are concerned with ballot access and not with any claim of a right to exercise free speech apart from the question of ballot access. Ballot access is of fundamental importance in our form of government because through the ballot the people can control their government. See *Bachrach* v. *Secretary of the Commonwealth*, 382 Mass. 268, 272 n.9 (1981). In limiting our decision to the matter

---

[10]In *Commodities Export Co.* v. *Detroit*, 116 Mich. App. 57, 62-63 (1982), the court held that there was no constitutional right to distribute commercial handbills on private property to which the public had access. The opinion contains no separate analysis of provisions of the State Constitution, although a free speech claim apparently was advanced under the State Constitution.

of soliciting signatures on ballot questions, we leave to another day the question of rights that may arise under art. 16 (free speech).[11]   The concept of free elections and an equal right to be elected "for public employments" embodied in art. 9 supports our conclusion that Batchelder has a constitutional right to solicit signatures at the North Shore Shopping Center.   The difference between free speech and art. 9 rights to free elections and to be a candidate equally with others is not purely theoretical.   Ideas and views can be transmitted through the press, by door-to-door distributions, or through the mail, without personal contact.   On the other hand, a person needing signatures for ballot access requires personal contact with voters.   He or she cannot reasonably obtain them in any other way.   Reasonable access to the public is essential in ballot access matters.

The fact that we are dealing with the private action on private property and not with public property or with at least direct government action is an important consideration.   Close attention must be given to the property interests of a mall owner in determining whether an intrusion is reasonable in time, place, and manner.   We are not discussing signature solicitations in stores but only unobtrusive and reasonable solicitations in the common areas of the mall, areas that have been dedicated to the public as a practical matter.   The North Shore Shopping Center is one of the largest shopping malls in the country.   Shopping malls, a recent and growing form of retail merchandising, function in many parts of this State much as the "downtown" area of a municipality did in earlier years.   On the record, the North Shore Shopping Center is the most favorable area in the

[11] Batchelder relies on both art. 9 and art. 16 before this court.   The Attorney General's brief, on his own behalf and on behalf of the Secretary of the Commonwealth as amici curiae, argues in support of Batchelder solely in reliance on art. 16.   No party relies on the right of the people "in an orderly and peaceable manner, to assemble to consult upon the common good."   Art. 19 of the Declaration of Rights.   Some of the recent opinions of other State courts have alluded to State constitutional rights of assembly.   See *State* v. *Schmid, supra* at 557-560; *Commonwealth* v. *Tate, supra* at 169, 173.

Sixth Congressional District to solicit signatures. Batchelder's activity was substantially related to the basic right of free election, which would be substantially impaired in the absence of access. The fact that Batchelder could (and did) obtain a sufficient number of signatures at less desirable locations is not controlling.

We acknowledge North Shore's right to prescribe reasonable limitations on the locations at which signatures may be solicited and the manner in which they may be sought. Where, however, North Shore has not shown that Batchelder's solicitations adversely affected its economic interests or those of its tenants or that the views expressed by Batchelder could reasonably be attributed to North Shore, North Shore's bare title to the real estate is the only property interest whose protection would support a decision against Batchelder.[12]

The judgment of the Superior Court is vacated, and a judgment declaratory of Batchelder's rights consistent with this opinion shall be entered.

*So ordered.*

LYNCH, J., dissenting (with whom Hennessey, C.J., and O'Connor, J., join). In deciding that the plaintiff has a right under art. 9 of the Declaration of Rights to solicit signatures on the defendants' property, this court has concluded that no "State action" requirement limits the application of this article to the facts of this case. I respectfully dissent.

---

[12]North Shore has authorized numerous exhibits and activities at the mall, including entertainment, and has allowed various civic and charitable organizations to conduct activities for their own benefit. See note 4, *supra*. These events were designed to attract persons to the mall and to generate good will. Admittedly, these authorized activities differ from Batchelder's activity because his involved no benefit to the mall. However, North Shore did permit political candidates, already on the ballot, to shake hands with patrons at the mall. Its authorization of these political activities tends to suggest that what Batchelder was doing was not a significant intrusion on North Shore's interest.

Consideration of the general purposes of our State Constitution persuades me that art. 9 does not apply to private conduct of the type to which the plaintiff objects. This court has said that "[t]he function of a written constitution adopted by the people is to establish . . . an objective standard of conduct by which all departments of the government, executive, legislative and judicial alike, shall be bound." *Opinion of the Justices,* 324 Mass. 746, 748 (1949). "It is the final statement of the rights, privileges and obligations of the citizens and the ultimate grant of the powers and the conclusive definition of the limitations of the departments of State and of public officers. In its grant of powers, the bounds set for their exercise, the duties enforced and the guarantees established are found the constitutional liberty of the individual and the foundation for the regulated order and general welfare of the community. To its provisions the conduct of all government affairs must conform." *Opinion of the Justices,* 233 Mass. 603, 611 (1920). Accord *Loring* v. *Young,* 239 Mass. 349, 376-377 (1921). See also *Tax Comm'r Putnam,* 227 Mass. 522, 523 (1917). Consistent with the thrust of these passages are statements more specifically concerned with the Declaration of Rights. Thus: "The purpose of the Declaration of Rights was to announce great and fundamental principles, to govern the action of those who make and those who administer the law . . ." *Foster* v. *Morse,* 132 Mass. 345, 355 (1882). In an earlier case it was said that "[t]he manifest object of the Declaration of Rights was, to give the most explicit an abiding sanction to some of the general principles, supposed to be essential to the maintenance of free government, for the general guidance and regulation, as well of the legislature as of the people." *Commonwealth* v. *Kneeland,* 20 Pick. 206, 219 (1838).

As these passages illustrate, the fundamental role of our State Constitution is to define and to regulate the relationship between the government and the people. The liberty of the people is safeguarded by grants of power to, and limitations on, the various branches of government. The

Constitution and the Declaration of Rights serve as ultimate arbiters of conflicts between the people and those who represent government in all its manifestations. Regulation of the relationship between individual citizens or groups of citizens is not, generally speaking, a concern of the Constitution but of the Legislature acting pursuant to its police power and other constitutional powers. When the equal right to elect and be elected to public office guaranteed by art. 9 is read in light of these principles, it is clear that the article is concerned with governmental abridgements and not with interferences generally.

My review of the State cases relied upon by the majority also convinces me that it would be unwise to depart from a requirement of governmental conduct in this instance. These courts, reaching the same result as the majority here, adopt a balancing test and proceed to analyze a variety of factors in order to determine the extent of the protected activity in a particular case. See *State* v. *Schmid,* 84 N.J. 535, 563 (1980), appeal dismissed sub nom. *Princeton Univ.* v. *Schmid,* 455 U.S. 100(1982); *Commonwealth* v. *Tate,* 495 Pa. 158, 173-174 (1981); *Alderwood Assocs.* v. *Washington Envtl. Council,* 96 Wash. 2d 230, 244-246 (1981). I find no support for such an open-ended approach.

I am aware of the important role which privately held shopping centers play in the commercial life of many communities today. See generally, Note, Private Abridgement of Speech and the State Constitutions, 90 Yale L.J. 165, 168-169 (1980). Understandably, many individuals and groups hoping to promote a political, social, or religious cause view shopping centers such as the North Shore Shopping Center as highly desirable forums for the communication of their views. Nonetheless, history and logic persuade me that our State Constitution should be read as incorporating a threshold requirement of State action before the courts may act to protect asserted rights under the Declaration of Rights. Furthermore, I see no reason to find in art. 9 a guarantee of greater rights than those protected under the Federal Constitution. *Hudgens* v. *NLRB,* 424 U.S 507

(1976). *Lloyd Corp.* v. *Tanner*, 407 U.S. 551 (1972). The plaintiff in this case was free to gather signatures and to distribute campaign literature in the public areas of all the towns and cities in the Sixth Congressional District, and his right to do so was protected under both the Federal and State Constitutions. It should be kept in mind that it was by the exercise of this right that the plaintiff obtained a place on the ballot. I would hold, however, that he had no further right, under the State Constitution, to carry his efforts into the North Shore Shopping Center.

Article 9 expresses "[t]he Commonwealth['s] . . . substantial, compelling interest in assuring the fairness of elections and the appearance of fairness in the electoral process." *Anderson* v. *Boston*, 376 Mass. 178, 193 (1978). The plaintiff's argument that art. 9 entitles him to carry out campaign activities at North Shore because it is "perhaps the largest center for the congregation of voters in the Sixth District" has potentially broad ramifications. It suggests that art. 9 is violated every time the owner of private property which attracts large concentrations of people bars political campaigning on the property. Article 9 does not reach this far. It is a guarantee that no branch of the government will do anything inconsistent with "[f]airness and the appearance of fairness" in the electoral process. *Id.* at 195. It does not ensure that all candidates receive the same level of public exposure. No governmental agency erected any barrier to the plaintiff's campaign. I would find this fact conclusive on the art. 9 issue.

Even if no State action requirement is found to limit the application of art. 9, it does not appear to me that the plaintiff's cause is aided by this article. The plaintiff's experts testified that the alternatives to solicitation of signatures at the North Shore Shopping Center were door-to-door and downtown area campaigning and that these methods were inefficient and not very effective. Thus, the plaintiff has at best established that his solicitation of signatures on North Shore's property may be desirable but not necessary for the effective exercise of his ballot access rights. I believe that

such a showing is an insufficient basis for affording him art. 9 rights on the defendants' property. Furthermore, the record demonstrates, and the trial judge found, that North Shore's policy was to permit political candidates already on the ballot to enter and walk around the mall area but prohibited all candidates from soliciting signatures and distributing literature. It is hard for me to understand how such a policy, uniformly applied, could violate art. 9, which guarantees that elections be free and that the inhabitants of the Commonwealth "have an equal right to elect officers, and to be elected, for public employments."

In sum, my principal objection to the majority position is its adoption of a balancing of interests concept in place of a State action requirement. It has been pointed out that once a State Constitution is freed from some form of State action limitation, its protections would theoretically apply to a wide range of private disputes. Note, Developments in the Law — The Interpretation of State Constitutional Rights, 95 Harv. L. Rev. 1324, 1425 (1982). *Alderwood Assocs., supra* at 250-251 (Dolliver, J., concurring) ("[n]ow there is no limit to the range of wrongs which this court may right").

There is no reason to so expand the role of this court. I would affirm the judgment of the Superior Court.