Cowin, J.
This matter is before the Court on plaintiffs motion for preliminary injunction pursuant to Mass.R.Civ.P. 65(b). Plaintiff, Shawsheen River Estates Associates Limited Partnership, is the developer (“the Developer”) of a condominium project of duplex and triplex homes in Wilmington, Massachusetts. The Developer seeks to enjoin the speech and activities of two condominium owners, defendants Helen Herman (“Herman”) and Michael Thomas (“Thomas”). Defendants have attempted through leafletting, picketing, posting signs and oral communication to express their concerns regarding the condition of their homes to prospective purchasers of unsold units at the development.
Plaintiff has asserted counts of Intentional Interference with Advantageous Relations (Counts I and V) and Civil Conspiracy (Counts IV and VI) against both defendants. Plaintiff further alleges counts in Trespass (Count II) and Defamation (Count III) against Herman and Violating Covenants (Count VII) against Thomas. Plaintiff seeks injunctive relief on all counts and damages for lost profits under counts I though VI.
Defendants oppose the injunction on the ground that plaintiff cannot show the requisite likelihood of success on the merits of its claims. Defendants further argue that 1) the injunction would create a prior restraint on their freedom of speech in violation of the First Amendment to the U.S. Constitution and Article 16 of the Massachusetts Declaration of Rights; and 2) plaintiffs alleged harm can be compensated by money damages for lost profits.
BACKGROUND
The following facts derive from the parties’ submissions on this motion for preliminary relief. Defendants purchased condominium homes in Shawsheen Commons, a development built by plaintiff in Wilmington, Massachusetts. A number of units remain for sale and others are yet to be built. The unsold units and vacant lots remain the property of the Developer who is engaged in attempting to sell the completed homes. Money from the sale of the completed homes will allow the developer to build on the remaining lots. Plaintiff maintains an on-site sales trailer and a model home which are used by plaintiffs brokers in the sales process.
Defendants allege that they have experienced a number of problems with the construction, interior and exterior finishes and systems in their homes.[2] Defendants have sought plaintiffs attention in resolving these problems.[3] Discontented with the responses they have received from plaintiff, defendants have attempted to inform prospective purchasers about the problems defendants have experienced and to dissuade prospective purchasers from buying homes at Shawsheen Commons. Defendants’ signs, leaflets and speech detail their problems and dissatisfaction with their units.
In pursuit of defendants’ efforts, Herman has entered upon plaintiffs property and followed prospective purchasers into the sales trailer and model home while speaking to them and attempting to hand them leaflets. Both Herman and Thomas have stood on the roads[4] of the development canying placards and addressing comments and passing leaflets to prospective purchasers. Both defendants have attached leaflets to the windshields of prospective purchasers’ cars. Both defendants have attached signs to their own cars. They have displayed these signs while parked near the sales trailer and while driving around the site. Thomas has posted signs on the exterior of his home complaining of code violations and problems with his condominium.
The affidavit of John T. Bresnahan, acting General Partner of the Limited Partnership (“Bresnahan”), states that defendants’ actions have prevented six sales thus far, resulting in lost profits of approximately $35,000 on each sale, or approximately $210,000. The loss of these sales limits plaintiffs ability to satisfy outstanding obligations of the development. Bresnahan further states that defendants’ ongoing activify jeopardizes both the financial solvency of the project and plaintiffs business reputation.
The affidavit of real estate broker Kathleen A. Griffin (“Griffin”) states that some of Herman’s actions have frightened prospective purchasers away and placed Griffin in fear of her personal safety. Specifically, Herman drove her car toward Griffin and some customers, then got out of her car and charged at *476 Griffin and the customers, screaming and waving papers.
Plaintiff argues that 1) defendants’ aggressive tactics have interfered with plaintiffs ability to sell homes and thus constitute tortious interference with advantageous relations (Counts I and V); 2) Herman’s entering the sales trailer, model homes and vacant lots constitutes trespass, as does her use of the roads for purposes other than access to her home (Count II); 3) Herman’s statements, both oral and written, are defamatory and her speech is obscene (Count III);[5] 4) defendants’ concerted activities constitute a civil conspiracy (Counts IV and VI); and 5) Thomas’ display of signs on his home violates protective covenants to which his property is subject.[6] Finally, plaintiff argues that failure to issue a preliminary injunction will cause it to suffer irreparable harm not capable of remediation through money damages because its business reputation will be irreparably damaged; and money damages are insufficient because defendants’ continued tortious interference will result in plaintiffs bankruptcy. In this action, plaintiff has sought and obtained a temporary restraining order.[7]
Defendants oppose the issuance of a preliminary injunction. Defendants argue that a) plaintiffs are unlikely to succeed on the merits of their claims; b) the issuance of an injunction violates their First Amendment right to free speech by creating a prior restraint on their speech; and c) even if certain claims are meritorious, the harm alleged can be compensated through the money damages sought by plaintiff.
DISCUSSION
“In evaluating a request for preliminary relief the court must first evaluate, in combination, the moving party’s claim of injury and its chance of success on the merits. If the failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the court must then balance this risk against any similar risk of irreparable harm which granting the request would create for the opposing party. The raw amount of conceivable irreparable harm which each party may suffer does not matter; rather, the court must evaluate the risk of harm in light of the party’s chance of success on the merits.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). See Planned Parenthood League of Massachusetts v. Operation Rescue, 406 Mass. 701, 710 (1990).
I. Plaintiffs Likelihood of Success on the Merits
A.Intentional Interference with Advantageous Relations
To prove its claims of intentional interference with advantageous relations plaintiff must show (1) a business relationship or contemplated contract of economic benefit; (2) the defendants’ knowledge of such relationship; (3) the defendants’ intentional interference with the relationship, which interference was improper in motive or means; and (4) the plaintiffs loss of advantage directly resulting from the defendants’ conduct. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990).
Plaintiff has demonstrated sufficient facts to show each element of the claim alleged and that it has a reasonable likelihood of success on the merits. Defendants’ argument that their aggressive tactics are justified by their concerns that other purchasers might be subject to problems similar to those experienced by defendants is not persuasive.
B.Trespass Claim Against Herman
To prove its claim that Herman trespassed upon its property, plaintiff must show (1) plaintiffs possession or right to possession and (2) unauthorized act or entry by defendant. See J.R. Nolan and L.R. Sartorio, Tort Law §§51-53, pp. 51-63 (1989); Edgartown v. Welch, 321 Mass. 603, 612-13 (1947); Gage v. Westfield, 26 Mass.App.Ct. 681, 685 n.8 (1988).[8] Damages are not an essential element of this tort. Old Colony Donuts, Inc. v. American Broadcasting Cos.. Inc., 385 F.Supp. 785, 789 (D.Mass. 1974). Here plaintiffs possession is not contested. The issue in contention is whether defendants had a legal right or license to enter upon plaintiffs property and whether such license was abused. “Any entry without right or license is illegal.” Blatt v. McBarron, 161 Mass. 21, 22 (1894).
Herman asserts a right to enter upon and use the roads in the development pursuant to her deed which granted her ”... The right to use the streets and ways ... for all purposes for which streets and ways are commonly used in the Town of Wilmington ...” The U.S. Supreme Court stated in Schneider v. State, 308 U.S. 147, 163 (1939), that “streets are natural and proper places for the dissemination of information and opinion.” Since it would seem that the streets and ways of Wilmington may thus be used for the distribution of literature and the making of speeches, as long as there is no impediment to public safety, Id. at 160, Herman has a right to so use the roads in the development.
Whether Herman has plaintiffs consent or license to enter the sales office, model home or vacant lots is less clear. Although plaintiff advertised homes for sale to the public and opened the sales office and model home for this business purpose, it retains the right to terminate a business invitee’s right to enter.[9] Furthermore, Herman was not entering plaintiffs property with the intent to purchase a home. Consent to enter may be terminated. Scioscia u. lovieno, 318 Mass .601, 603 (1945). Plaintiff has a reasonable likelihood of success on the merits of its trespass claim as regards plaintiffs property other than the roadways.
C.Defamation Claim Against Herman
To prove its claim of defamation against Herman, plaintiff must prove (1) defamation, oral or written (2) of and concerning the plaintiff (3) which is made public, (4) the falsity of the statement (or malice if true) *477 and (5) damage. See R.W. Bishop, Prima Facie Case— Proof and Defense, §1217, pp. 379-84 (1987) and J.R. Nolan and L.R. Sartorio, Tort Law §§118-134, pp. 156-227 (1989). Where the defamation alleged is slander (oral), certain words are actionable per se, inclúding words which prejudice plaintiff in its profession or business. Lyman v. New England Newspaper Pub. Co., 286 Mass. 258 (1934). Truth is a complete defense to slander and is a defense to libel unless actual malice is proved by the plaintiff. McAvoy v. Shufrin, 401 Mass. 593, 597 (1988). The burden of proving the truth of statements is upon defendant, id., who must show that the statement is true in all material aspects. Maloof v. Post Pub. Co., 306 Mass. 279, 280 (1940). Substantial, not literal, truth is required. Connor v. Standard Pub. Co., 183 Mass. 474, 478 (1903).
A statement is considered defamatory if it holds plaintiff up to hatred, ridicule or scorn and tends to discredit plaintiff in the minds of any considerable and respectable class in the community. King v. Globe Newspaper Company, 400 Mass. 705, 718 (1987), Ingalls v. Hastings & Sons Pub. Co., 304 Mass. 31 (1939); Bishop, §1202. Where the defamatory communication consists of a statement in the form of an opinion, it is actionable only if the statement implies the allegation of undisclosed defamatory facts as the basis for the opinion. King v. Globe Newspaper Company, 400 Mass, at 713, Pritsker v. Brudnoy, 389 Mass. 776, 778-79 (1983).
Plaintiff has submitted evidence of statements made by defendants concerning plaintiff discrediting plaintiff in the eyes of potential purchasers, thereby prejudicing plaintiff in its business. There is some question as to whether certain statements made by defendants were true, partially true, or matters of opinion alleging defamatory underlying facts. The statement by Herman that “Shawsheen hasn’t done a fucking thing for me” is false, based upon Herman’s own affidavit which states that certain problems have been fixed, others have not been repaired to her satisfaction, and still others have not been repaired. Statements such as “Buyer beware” and “these houses are falling down” are more in the nature of opinion, though they suggest underlying defamatory facts. The statement that “the basements are flooded” is susceptible of objective proof. If true, it is not defamatory; if false, it may constitute defamation. Nonetheless, plaintiff has demonstrated sufficient facts to show a reasonable likelihood of success on the merits of this claim.
D. Civil Conspiracy Claim
To prove its claim of civil conspiracy, plaintiff must show (1) the combination of two or more persons to accomplish an unlawful purpose, or a purpose not unlawful by unlawful means and (2) some peculiar power of coercion of the plaintiff possessed by the defendants in combination, which any individual standing in like relation to plaintiff would not have had, and (3) damage. R.W. Bishop, Prima Facie Case— Proof and Defense, §983, 194-95 (1987); DesLauries v. Shea, 300 Mass. 30, 33 (1938); Johnson v. East Boston Savings Bank, 290 Mass. 441, 445 (1935).
Plaintiff alleges defendants have formed an agreement to prevent sales of homes at the development and have used unlawful means, including trespass and assault,[10] to achieve that purpose. Plaintiff claims that defendants acted jointly and coordinated their efforts to produce the greatest harm to plaintiff.
The facts alleged in plaintiffs complaint and supported by affidavits do not suggest the sort of “peculiar power of coercion of the plaintiff possessed by defendants in combination which any individual standing in like relation to plaintiff would not have had.” DesLauries v. Shea, supra, at 33. Even though defendants may indeed have acted jointly, and may have employed illegal means, or legal means for an illegal purpose (interference with advantageous relations) this in itself does not confer upon them a peculiar coercive power over plaintiff. In review of the affidavits it appears that Herman’s actions alone may have caused some prospective purchasers to leave the site and that Thomas’ signs alone may have dissuaded others. Plaintiff is not likely to succeed on the merits of its claims of civil conspiracy.
E. Thomas’ Violation of Covenants
Plaintiff has alleged, and Thomas does not deny, that Thomas has attached signs to the exterior of his home in violation of the restrictive covenant prohibiting more than one sign and that bearing only the owner’s name. See n.6, supra. Thomas, at oral argument, maintained that plaintiff, too, has posted signs which are in violation of the covenant. It appears that plaintiff, as owner of unsold homes and vacant lots, is subject to the covenant’s restrictions on signage.[11] Plaintiff agreed at oral argument on this motion that it would remove its signs if Thomas were required to remove his. Plaintiff will succeed on the merits of this claim.
II. Plaintiffs Risk of Irreparable Harm
Plaintiff argues that if an injunction does not issue restraining defendants’ speech and activities, plaintiff will continue to suffer economic losses which will result in the bankruptcy of the development. Plaintiff also argues that defendants’ statements have already damaged its business reputation and will cause plaintiff irreparable harm unless enjoined. Plaintiff has supported these assertions with the affidavit of General Partner Bresnahan.
III. Balancing Risk of Harm Against First Amendment Rights
Although it appears that failure to issue the injunction may subject plaintiff to a substantial risk of irreparable harm, this risk must be balanced against the defendants’ First Amendment right to free speech, protected from prior restraint. “It is apparent that the *478 constitutional protections of free speech and public interest in the discussion of many issues greatly limit the area in which the power to give injunctive relief may or should be exercised in defamation cases.” Krebiozen Research Foundation v. Beacon Press, 334 Mass. 86, 93 (1956), cert, denied, 352 U.S. 848 (1956). “Our law thinks it is better to let the defamed plaintiff take his damages for what they are worth than to entrust a single judge (or even a jury) with the power to put a sharp check on the spread of the possible truth.” Id. at 95. “[E]ven allegedly false and defamatory statements are protected from prior injunctive restraint by the First Amendment and art. 16" of the Massachusetts Declaration of Rights. Nyer v. Munoz-Mendoza, 385 Mass. 184, 188 (1982), citing Krebiozen.
Although the Supreme Judicial Court in Krebiozen determined that “equity has jurisdiction to enjoin libel and slander,” 334 Mass, at 93, it held that “whether it is to be exercised . . . depends . . . upon all of the relevant circumstances.” Id. The Court then looked to the public interest in the discussion of the subject (cancer research) and found that free speech interests outweighed the plaintiffs alleged harms.
Even if we “assumje] a right to restrict speech on the basis of legitimate state or private interests, the means used must be precisely and narrowly drawn so as to avoid unnecessaiy restriction of constitutionally protected liberty.” Nyer v. Munoz-Mendoza, 385 Mass, at 188.
The Supreme Judicial Court, reviewing the issuance of an injunction in Planned Parenthood Inc. v. Operation Rescue, 406 Mass. 701 (1990), noted that “[w]hen issuing an injunction, a judge must differentiate between legal and illegal expressive activity, and must carefully tailor the injunction to avoid unconstitutionally infringing upon activity protected by the First Amendment. Clearly, some of the defendants’ activities at the protests, such as . . . singing and chanting on public sidewalks, are protected, expressive activity.” Id. at 713-14. In upholding the injunction at issue therein, the Court noted that “the injunction does no more than enjoin the defendants from engaging in illegal activity such as trespass or obstruction of... entranceways[. ] The injunction does not prohibit other types of expressive activity such as . . . singing, or peacefully picketing, which does not unduly interfere with the rights of others.” Id. at 715-16. “Also, the injunction is content-neutral, and makes no reference to the specific viewpoints espoused . . . The injunction leaves the defendants free to express their views[.]” Id.
Although the plaintiff may well prevail on most of its claims, its likelihood of success must be evaluated against the harm to it if the injunction is denied and the risk of irreparable harm which granting the request would create for the defendants. The harm created by restraining speech is a fair greater one than that which can be cured by a monetary award.
In issuing an injunction today I seek only to restrain illegal activity and do not endeavor to enjoin defendants’ speech, however defamatory and injurious it may be found to be when this case is tried on the merits. Although plaintiff asserts irreparable injury to its business reputation and economic interests, on balance, at this juncture, defendants present the more compelling argument. Their First Amendment right to express their concerns about the development to prospective purchasers should not be subject to prior restraint by this Court. Defendants will be limited geographically to the streets in the Development for the exercise of their First Amendment activity. Such a restriction as to place does not interfere with their opportunity to leaflet, picket or speak to prospective purchasers. The scope of their activity and its content is not limited; only the place where it may occur. Defendants will be restrained from trespassing on plaintiffs private property upon which they have no consent, right nor license to enter. Plaintiffs must resort to money damages for remedy of those harms which they can prove arising from the underlying claims.
In so deciding, I am cognizant that the speech here at issue may well not be protected. When the case is decided on the merits, the speech may indeed be determined unlawful. At this point, however, the speech is not to be restrained because of the constitutional considerations involved. The Court’s equitable relief is withheld not because it is likely that the defendants will ultimately prevail, but because prior restraint on speech is at issue. Recognizing that there may be irreparable harm to the plaintiff and balancing all these considerations, the injunction that is to issue will prevent the defendants from doing what is clearly unlawful — the trespass — but will not impose a prior restraint upon speech.
ORDER OF INJUNCTION
Based upon the foregoing, it is hereby ORDERED that defendants Michael Thomas and Helen Herman are enjoined from the following:
1) Entering upon the private property of the plaintiffs, including the sales office, model home and vacant lots without plaintiffs consent.
It is further ORDERED that Michael Thomas and plaintiff are;
2) To remove immediately any and all signs located on their respective properties which are in violation of the covenants stated in ¶6 of the “Declaration of Protective Covenants and Restriction at Shawsheen River Estates.”

Defendants complained of cracks in their foundations and basement floors which leak and cause basement flooding; heating pipes exposed to the outdoors; faulty caulking in kitchens and baths; improper drainage away from the homes; shrinkage in floor coverings and incorrect exterior painting. Although a number of these complaints were eventually *479 addressed by the plaintiff, the basement flooding, drainage and exterior paint finish problems remain.

Defendants' affidavits state that they have written letters to various government officials, both state and local; have gathered petitions and complaints from other Shawsheen Commons condominium owners and delivered these to the Attorney General; have attended Town Meetings; have written letters to the local paper and have repeatedly written and spoken to the Developer and its representatives. Defendants are dissatisfied with the repairs and responses offered to date.

The roads throughout the development are private ways owned by the Developer. However, each home buyer is deeded use of the roads for all purposes for which streets in the Town of Wilmington are commonly used.

the allegedly defamatory statements include: “Shawsheen hasn’t done a fucking thing for me,” “the houses are falling down,” “the basements are flooded,” “buyer beware," and “these houses are full of problems.” The allegedly obscene statements appear to be Herman’s frequent use of the term “fucking.”

Paragraph 6 of the “Declaration of Protective Covenants and Restrictions At Shawsheen River Estates" states: “Signs: No sign of any kind shall be displayed on any lot, except on [sic] sign of not more than one hundred fifty (150) square inches setting forth only the name of the owner residing thereon. Notwithstanding any provision herein, all signs shall comply with local zoning bylaws.”

On March 16, 1995, this Court, (Lopez, J.), issued a Temporary Restraining Order which stated: “Defendants are hereby restrained from approaching, speaking with or otherwise harassing prospective buyers; from entering property owned by Shawsheen; and from picketing on private ways owned by Shawsheen.” This Temporary Restraining Order was extended by me at a hearing on March 27,1995, effective until the issuance of this Order.

Gage states at 695, n.8 that “A trespasser has been defined as ‘a person who enters or remains upon land in possession of another without privilege to do so . . .’ ” citing Restatement (Second) of Torts, §329 (1965). “Generally, whether one is a trespasser depends on the consent of the owner.” Gage, supra.

defendants rely on Batchelder v. Allied Stores International, Inc., 388 Mass. 83 (1983), for the proposition that plaintiffs sales office, model homes and vacant lots are equivalent to a shopping center and are, therefore, private property held open to the public and as such should be available for leafletting, picketing and speech. This argument fails to recognize the following language in Batchelder: “We are concerned with ballot access and not with any claim of a right to exercise free speech rights apart from the question of ballot access.” Id. at 91. The Court then said that ”[i]n limiting our decision to the matter of soliciting signatures on ballot questions, we leave to another day the question of rights that may arise under art. 16 (free speech).” Id. at 91-92. The Court went on to consider whether the private property owner’s economic interest had been adversely affected and noted that no such argument had been made. Id. at 92-93. In the instant case, such an argument has been put forth and is central to plaintiffs claims. A private business owner has the right to eject a trespasser whose continuing trespass adversely affects the owner’s economic interests. Boston & Maine Railroad v. Sullivan, 177 Mass. 230, 233-234 (1900).

Plaintiff alleges that real estate broker Griffin’s affidavit supports an assault claim.

The “Declaration of Protective Covenants and Restrictions at Shawsheen River Estates” states in its preamble that “WHEREAS, [the Limited Partnership] are the owners and developers of a certain tract or parcel of land . . . [they] do hereby impose the covenants and restrictions herinafter [sic] set forth on all of those lots situated on said subdivision plan for the benefit of all owners in said subdivision.” In drafting the covenant, plaintiff did not carve out an exception for itself from the restrictions on owners contained in the covenant.